

<u>Counsel of Record</u>
M. Graham Loomis
W. Shawn Murnahan
Securities and Exchange Commission
950 East Paces Ferry Road, N.E.
Suite 900
Atlanta, Georgia 30326-1382
Tel: (404) 842-7600

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## NEWARK DIVISION

| | |
|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION** : | : |
| : | : |
| : | : |
| : | **Civil Action No.** |
| **Plaintiff,** : | : |
| **v.** : | : |
| : | : |
| : | : |
| **ONE OR MORE UNKNOWN TRADERS IN THE SECURITIES OF FORTRESS INVESTMENT GROUP, LLC** : | **JURY TRIAL** : **DEMANDED** |
| : | : |
| **Defendants.** : | : |
| : | : |

## COMPLAINT FOR VIOLATIONS OF
## THE FEDERAL SECURITIES LAWS

Plaintiff United States Securities and Exchange Commission (the "Commission"), 950 East Paces Ferry Road, N.E., Suite 900, Atlanta, GA 30326, alleges as follows:

## SUMMARY OF THE ACTION

1. This is an insider trading case involving highly suspicious trading by unknown traders ("Defendants") in the securities of Fortress Investment Group, LLC ("Fortress"), a company headquartered in New York whose shares of common stock are traded on the New York Stock Exchange. Fortress is an investment management firm that services institutional and individual investors.

2. After the U.S. markets closed on Tuesday, February 14, 2017, Japan-based SoftBank Group Corp. ("SoftBank") announced that it had entered into a definitive merger agreement to acquire Fortress for approximately $3.3 billion in cash ("the Announcement"). According to the Announcement, Fortress shareholders would receive $8.08 per share. That price represented a premium of 30% over Fortress's closing price that day of $6.21.

3. Defendants, who are believed to be foreign traders trading through foreign accounts, made timely purchases and sales of Fortress stock and derivative securities known as contracts for difference ("CFD") that generated profits of over $3.6 million. The identities of the Defendants are not yet known

2

because the stock and CFD purchase orders originated through foreign

brokerage firms.  Those foreign brokerage firms, in turn, cleared the stock

trades through domestic brokerage firms, which in turn executed the purchase

orders through the facilities of a domestic stock exchange.

4.  Among the Defendants are certain unknown customer(s) of Maybank

Kim Eng. Securities Pte. Ltd. ("Maybank"), who purchased 950,000 shares of

Fortress on Tuesday, February 14, 2017, preceding the Announcement, at prices

ranging from $5.92 to $6.35 per share.  Orders to sell those shares were entered

the next morning before the markets opened, and the shares were sold for a

profit of $1,679,464.

5.  The Defendants also include certain unknown customer(s) of R.J.

O'Brien Ltd. ("RJO Ltd."), who, between February 10 and February 14, 2017,

purchased Fortress CFDs from RJO Ltd. representing 1,055,500 shares of

Fortress.  These CFD purchases caused RJO Ltd. to hedge its exposure by

purchasing 1,055,500 shares of Fortress during the same time period, at prices

ranging from $5.88 to $6.17 per share.  1,050,000 shares were sold on February

15, 2017, at a price of $7.95 per share, for a total realized profit of

approximately $1,910,941.  There is a potential additional profit of

approximately $10,000 on the unsold shares.  As described more fully below,

the profits earned by the unknown purchasers of CFDs from RJO Ltd. should be identical to the profits on the sales of the underlying Fortress shares by RJO Ltd.

6. Defendants reaped total profits of approximately $3.6 million on their timely purchase and sale of Fortress securities.

7. The timing, size and profitability of these trades are highly suspicious. Based on information received from Fortress, the consummation of the deal was in serious doubt as late as February 12, 2017. Then, at 5:45 p.m. on February 13th (i.e., after trading closed that day), Fortress's board received notice of a February 14th meeting regarding the acquisition. On February 14th, Fortress's board of directors received an email at 11:02 am that included draft resolutions approving the transaction. The Maybank Defendants began buying Fortress stock at 11:35 a.m.

8. On February 15th, all of those shares were sold, having been held for less than 24 hours, for a profit of $1,679,463.61. The only other trading in Maybank's account at UBS LLC in Fortress stock over the past 14 months consisted of a purchase of 10,000 shares in February 2016 and the sale of those shares in April 2016. The size of the position that the Maybank account took in

4

Fortress on February 14, 2017, in excess of $5 million, is one of the larger

positions that account has recently taken in any one security in a single day.

9. The RJO Ltd. Defendants' trading was also very suspicious. Based on

information obtained from Fortress, the SoftBank acquisition had been in

discussions since December 2016, and was initially expected to be finalized

over the weekend of February 10-12, 2017. In fact, Fortress's board had been

tentatively scheduled to approve the transaction on February 12th. The RJO

Defendants began purchasing Fortress-based CFDs just prior to that weekend,

on Friday, February 10th. In addition, the board later received notice at 5:45

p.m. on Monday, February 13th that a board meeting was to be held on

February 14th in connection with the SoftBank acquisition. The RJO Ltd.

Defendants – who had purchased even more CFDs on February 13th – began

buying additional CFDs based on Fortress stock at 9:33 a.m. the next day,

February 14th.

10. As a result of the Announcement, Fortress's share price increased

substantially, from a close of $6.21 on February 14th to a close of $7.99 on

February 15th. This placed the Defendants in a position to gain substantial

profits, and in fact, Defendants sold virtually all their Fortress securities on

February 15th. Defendants' purchases (both their equities positions and the

5

corresponding hedge positions for the CFD purchases) on February 14, 2017

comprised a suspiciously high percentage of the total volume of Fortress stock,

nearly 20%.  The Announcement also caused a dramatic rise in Fortress's

trading volume, which increased by 1,672% from February 14th (8,547,319

shares traded) to February 15th (151,447,966 shares traded).

11.  Upon information and belief, the Defendants were in possession of

material, nonpublic information about SoftBank's impending acquisition of

Fortress at the time they made the purchases alleged in this Complaint, and

made their purchases based on this material, nonpublic information.

### NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

12.  The Commission brings this action pursuant to the authority

conferred upon it by Section 21(d) of the Securities Exchange Act of 1934

("Exchange Act"), 15 U.S.C. § 78u(d).  The Commission seeks permanent

injunctions against the Defendants, enjoining them from engaging in the

transactions, acts, practices, and courses of business alleged in this Complaint,

disgorgement of all ill-gotten gains from the unlawful insider trading activity

set forth in this Complaint, together with prejudgment interest, and civil

penalties pursuant to Section 21A of the Exchange Act, 15 U.S.C. § 78u-1.  The

Commission seeks any other relief the Court may deem appropriate pursuant to Section 21(d)(5) of the Exchange Act, 15 U.S.C. § 78u(d)(5).

## JURISDICTION AND VENUE

13.   This Court has subject matter jurisdiction pursuant to Sections 21(d), 21(e), 21A and 27 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(e), 78u-1, and 78aa].  The Defendants have directly or indirectly made use of the means or instrumentalities of interstate commerce, or of the mails, or the facilities of a national securities exchange in connection with the acts, practices, transactions, and courses of business alleged in this Complaint.

14.   Venue in this District is proper pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa].  Certain of the transactions, acts, practices, and courses of business constituting the violations alleged herein occurred within the District of New Jersey and elsewhere, and were affected, directly or indirectly, by making use of the means or instruments or instrumentalities of transportation or communication in interstate commerce, or of the mails, or the facilities of a national securities exchange.

15.  Securities transactions related to this matter were executed on servers located in New Jersey, including those operated by NYSE in Mahwah, NJ.

16.  Venue also lies in this Court pursuant to 28 U.S.C. § 1391(c)(3) because, upon information and belief, the Defendants are not residents of the United States.

17. Unless restrained and enjoined, the Defendants will continue to engage in the acts, practices, transactions, and courses of business alleged in this Complaint, or in acts, practices, transactions, and courses of business of similar purport and object.

## RELEVANT ENTITIES

18.  UBS Securities LLC ("UBS LLC") is a New York, NY-based brokerage firm that is registered with the Commission.  UBS LLC is affiliated with UBS Limited and UBS AG.

19.  UBS Limited ("UBS Ltd."), which is based in London, England, provides securities brokerage and investment banking services to its customers. UBS Ltd. is affiliated with UBS LLC, UBS AG, and UBS AG, London Branch. UBS Ltd. maintains omnibus trading accounts with UBS LLC.

8

20.  UBS AG, an affiliate of UBS LLC and UBS Ltd. and the parent of UBS AG, London Branch, is a Swiss global financial services company incorporated in Zurich, Switzerland and co-headquartered in Zurich and Basel, Switzerland.  UBS AG provides wealth management, asset management, and investment banking services to its individual and institutional clients.  UBS AG maintains omnibus trading accounts with UBS Ltd.

21.  UBS AG, London Branch is a London, England-based subsidiary of UBS AG, which provides financial services and products to its customers.  UBS AG, London Branch maintains accounts with UBS LLC.

22.  Maybank is a Singapore-based broker dealer that provides securities brokerage and a variety of other services to retail and institutional clients.  Maybank maintains a prime brokerage relationship with UBS AG London Branch.[1]  In connection with this prime brokerage relationship, Maybank is able to trade on the U.S. markets through accounts at UBS LLC.

---

[1]    "Prime brokerage" is a system developed by full-service firms to facilitate the clearance and settlement of securities trades for substantial retail and institutional investors who are active market participants.  Prime brokerage involves three distinct parties: the prime broker, the executing broker, and the customer.  The prime broker is a registered broker-dealer that clears and finances the customer trades executed by one or more other registered broker-dealers (the "executing broker") at the behest of the customer.  See e.g., Prime Broker Committee Request, SEC No–Action Letter, 1994 WL 808441 at *1 (January 25, 1994).

9

23.  Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") is New York, NY-based subsidiary of BAC North America Holding Company.  Merrill Lynch is dually registered with the Commission as a broker-dealer and an investment advisor.

24.  Merrill Lynch International ("MLI") is a London, England-based financial services company that offers various financial services to its customers.  MLI is an affiliate of Merrill Lynch.

25.  RJO Ltd., a London, England-based affiliate of R.J. O'Brien & Associates, LLC, is a derivatives clearing agent, offering risk management, trade settlement, and exchange connectivity to proprietary traders, brokers, market makers, and hedge funds.  RJO Ltd. maintains a prime brokerage relationship with MLI.  In connection with this prime brokerage relationship, RJO Ltd. is able to trade on the US markets through accounts maintained at Merrill Lynch.

### DEFENDANTS

26.  Upon information and belief, the Maybank Defendants are customers of Maybank who made suspicious purchases of a large number of Fortress stock shares through a Maybank-managed omnibus trading accounts maintained at UBS LLC (Account No. 220-46301 (the "UBS Omnibus Account").  Upon

information and belief, Maybank maintains a prime brokerage relationship and accounts with UBS Ltd. and/or UBS AG, London Branch, which provide it access to the U.S. markets through the UBS Omnibus Account, and through which its U.S. trades ultimately settle (the "UBS UK Accounts").

27.   Upon information and believe, the RJO Defendants maintain accounts at RJO Ltd. through which they can trade in, among other things, CFDs sold by RJO Ltd.   RJO Ltd. hedges its CFDs representing shares of U.S.-traded entities by purchasing shares of the U.S.-traded entities through an account maintained at Merrill Lynch (Account No. 5XN-01Y07, in the name of The Kyte Group, Ltd. (the "Merrill Lynch Account")).   RJO Ltd. has access to the U.S.-markets through the Merrill Lynch Account based on a prime-brokerage relationship with MLI.

## FACTUAL ALLEGATIONS

### The Announcement and the Market Reaction

28.   After the market closed on February 14, 2017, Softbank, a global technology company headquartered in Japan focused on telecommunications, artificial intelligence, clean energy, and other industries, announced that it had entered into a definitive agreement to acquire Fortress, an investment firm with

11

over 1,700 institutional and individual clients and approximately $70 billion in managed assets, for $3.3 billion in cash.

29.   Under the terms of the agreement, Softbank would pay $8.08 per share, a premium of 38.6% over Fortress's closing price on February 13, 2017.

30.   Fortress, whose shares closed at $6.21 on February 14, 2017, closed at $7.99 on February 15, 2017.

**Suspicious Trading – Certain Unknown Purchasers Through Maybank**

31.   On Tuesday, February 14, 2017, before the Announcement, certain unknown customer(s) of Maybank purchased 950,000 shares of Fortress for between $5.92 and $6.35 per share in the UBS Omnibus Account.  Maybank's purchase of 950,000 shares on behalf of certain unknown customer(s) constituted over 11% of the total trading volume for Fortress on February 14, 2017.

32.   Those shares were then sold, having been held for less than 24 hours, between the Announcement and the opening of the market the next day for a profit of $1,679,463.61.

33.   The timing that the Maybank trading began is also highly suspicious. Specifically, the Maybank Defendants began trading on the first trading day after the Fortress board received notice that a board meeting was to be held in

connection with the SoftBank acquisition.  Moreover, the Maybank trading did

not begin until 11:35 a.m., a little over 30 minutes after the Fortress Board

received an email that included draft resolutions approving the transaction.

34.  The only other trading in the UBS Omnibus Account in Fortress

stock over the past 14 months consisted of a purchase of 10,000 shares in

February 2016 and the sale of those shares in April 2016.  The size of the

position that the UBS Omnibus Account took in Fortress on February 14, 2017,

in excess of $5 million, is one of the larger positions that account has recently

taken in any one security in a single day.

35.  The transactions were all conducted through the UBS Omnibus

Account.  As a result, the Commission, to date, has not been able to learn the

identity of the individual customers of Maybank who are responsible for the

suspicious trading in Fortress.

36.  The trading in Fortress on the day before the announcement is nearly

100 times greater than the cumulative previous trading in Fortress in the UBS

Omnibus Account.

37.  Upon information and belief, the unknown Maybank customers who

purchased Fortress stock were in possession of material, non-public information

about SoftBank's offer to acquire Fortress at a substantial premium over the

stock price at the time they made the purchases alleged in this Complaint.

### Suspicious Trading – Certain Unknown Purchasers Through RJO Ltd.

38. Between February 10 and February 14, 2017, certain unknown

customer(s) of RJO Ltd. purchased CFDs from RJO Ltd. representing

1,055,500 shares of Fortress common stock. Based on information received

from RJO Ltd., RJO Ltd. hedges all of its CFD sales and that the contract price

with its customer is set by reference to the price of its hedge. Consequently, in

order to price a CFD, RJO Ltd. purchases the underlying securities before or

contemporaneously with the CFD transaction.

39. In connection with its sale of CFDs representing 1,055,500 shares of

Fortress common stock, RJO Ltd. acquired 1,055,500 shares of Fortress

between February 10, 2017, and February 14, 2017, in the Merrill Lynch

Account.

40. Specifically, between February 10, 2017 and February 13, 2017, the

Merrill Lynch Account purchased 170,505 of the Fortress common shares at

issue.[2] The Merrill Lynch Account purchased an additional 884,995 Fortress

---

[2]     Upon information and belief, the RJO Ltd.-managed account has had no
prior trading in Fortress securities.

common shares on February 14, 2017, with purchases beginning at the market open and continuing through market close.  The purchases were made at prices ranging from $5.88 to $6.17 per share.

41.  The timing of the RJO Ltd. Defendants' trading was very suspicious. The SoftBank acquisition had been in discussions since December 2016, and was initially expected to be finalized over the weekend of February 10-12, 2017.  In fact, Fortress's board had been tentatively scheduled to approve the transaction on February 12th.  The RJO Defendants began purchasing Fortress-based CFDs just prior to that weekend, on Friday, February 10th.  In addition, the board later received notice at 5:45 p.m. on Monday, February 13th that a board meeting was to be held on February 14th in connection with the SoftBank acquisition.  The RJO Ltd. Defendants – who had purchased even more CFDs on February 13th – began buying additional CFDs based on Fortress stock at 9:33 a.m. the next day, February 14th.

42.  The February 14, 2014 purchases in the Merrill Lynch Account constituted approximately 10% of the total trading volume in Fortress common shares on that day.

43.  The Merrill Lynch Account sold 1,050,000 Fortress shares at $7.95 per share on February 15, 2017, for total realized profits of approximately

15

$1,911,000.  There is a potential profit of approximately $10,000 on the unsold shares.

44.  Based on information from RJO Ltd., the timing of and profits from these sales correspond to the timing of and profits realized by its customers exiting their positions in the CFDs.  Consequently, the realized and unrealized profits of RJO Ltd.'s customers should be identical (or nearly identical) to RJO Ltd.'s realized and unrealized profits on the purchase and sale of Fortress common shares in the Merrill Lynch Account.

45.  Upon information and belief, the unknown customers who traded in CFDs based on Fortress stock were in possession of material, non-public information about SoftBank's offer to acquire Fortress at a substantial premium over the stock price at the time they made the purchases alleged in this Complaint.

## CLAIM FOR RELIEF

### Violations of Exchange Act Section 10(b) and Rule 10b-5 Promulgated Thereunder (Against All Defendants)

46.  Paragraphs 1 through 45 are re-alleged and incorporated by reference.

47.  Upon information and belief, at the time the Defendants purchased Fortress securities as set forth above, they were in possession of material,

16

nonpublic information about SoftBank's impending acquisition of Fortress. The Defendants (a) knew, recklessly disregarded, or should have known that their trading was in breach of a fiduciary duty or similar duty of trust and confidence owed to the shareholders of Fortress, or to the source from whom they received the material, nonpublic information; and/or (b) knew, recklessly disregarded, or should have known that the material, nonpublic information concerning the impending acquisition had been communicated to them was disclosed or misappropriated in breach of a fiduciary duty or similar duty of trust and confidence.

48. Upon information and belief, any and all material nonpublic information that the Defendants received concerning Fortress as set forth above, was disclosed in exchange for a personal benefit that benefited the communicator of such information.

49. By engaging in the conduct described above, Defendants knowingly or recklessly, in connection with the purchase or sale of securities, directly or indirectly, by use the means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange:

    (a)    employed devices, schemes or artifices to defraud; and

(b)     made untrue statements of material facts or omitted to state

material facts necessary in order to make the statements made, in

light of the circumstances under which they were made, not

misleading; and/or

(c)     engaged in acts, practices, or courses of business which operated or

would operate as a fraud or deceit upon any person in connection

with the purchase or sale of any security.

50.  By engaging in the foregoing conduct, the Defendants, directly and

indirectly, violated Section 10(b) of the Exchange Act [15 U.S.C § 78j(b)] and

Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court

enter an emergency, temporary, and preliminary order against Defendant: (i)

freezing assets; (ii) requiring Defendants' identification; (iii) requiring repatriation

of assets; (iv) preventing document alteration or destruction; (v) expediting

discovery in this action; (vi) providing for alternative service of process against

Defendants; and (vii) requiring Defendants to show cause why the Court should

not issue a Preliminary Injunction and impose other relief against them.

Further, the Commission respectfully requests that the Court enter a final judgment:

## I.

Permanently restraining and enjoining Defendants from, directly or indirectly, violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

## II.

Ordering Defendant to disgorge all ill-gotten gains or unjust enrichment derived from the activities set forth in this Complaint, together with prejudgment interest thereon;

## III.

Ordering Defendant to pay a civil penalty pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1]; and

## IV.

Granting such other and further relief as this Court may deem just, equitable, or necessary in connection with the enforcement of the federal securities laws and for the protection of investors.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the

Commission demands trial by jury in this action of all issues so triable.


Dated:  February 24, 2017

Respectfully submitted,

M. Graham Loomis
Regional Trial Counsel
Georgia Bar No. 457868
Tel: (404) 842-7622
Email: loomism@sec.gov

W. Shawn Murnahan
Senior Trial Counsel
Georgia Bar No. 529940
Tel: (404) 842-7669
Email: murnahanw@sec.gov

COUNSEL FOR PLAINTIFF
Securities and Exchange Commission
950 East Paces Ferry Road, N.E.
Suite 900
Atlanta, Georgia 30326-1382
Tel: (404) 842-7600
Fax: (703) 813-9364